EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elaine E. López Torres<br><br>    Recurrida<br><br>               v.<br><br> Juan A. González Vázquez<br><br>      Peticionario | Certiorari<br><br>2004 TSPR 172<br><br>163 DPR _____ |

Número del Caso: CC-2003-473

Fecha: 12 de noviembre de 2004

Tribunal de Circuito de Apelaciones:

              Circuito Regional VII de Carolina    y
              Fajardo

Juez Ponente:

              Hon. Rafael L. Martínez Torres


Abogado de la Parte Peticionaria:

              Lcdo. Carlos Gallisá


Abogado de la Parte Recurrida:

              Lcdo. Víctor M. Rivera Torres



Materia: Sentencia Declaratoria



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elaine E. López Torres

    Recurrida

        v.

Juan A. González Vázquez

    Peticionario

CC-2003-473

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 12 de noviembre de 2004.

Para fines de inventario y eventual liquidación de una sociedad legal de gananciales, debemos precisar si los ingresos, bonificaciones e incentivos derivados de cierto contrato de servicios profesionales, suscrito por uno de los ex cónyuges antes de contraer matrimonio, se consideran bienes privativos o gananciales.

I.

Luego de advenir final y firme nuestra decisión en López v. González, res. el 6 de junio de 2000, 2000 TSPR 80, en la cual anulamos las capitulaciones

matrimoniales suscritas por el Sr. Juan A. González Vázquez y la Sra. Elaine E. López Torres, esta solicitó del Tribunal de Primera Instancia que iniciase el trámite de inventario y liquidación de los bienes habidos en su matrimonio con el señor González Vázquez. En lo pertinente, requirió que fueran objeto de inventario y eventual liquidación los ingresos, bonificaciones (en particular un bono por firmar ("signing bonus") e incentivos derivados de un contrato de servicios profesionales suscrito entre el señor González Vázquez y el equipo de béisbol profesional "Los Vigilantes de Texas" el 31 de marzo de 1994, en el estado de Texas. Mediante dicho contrato-- denominado "Contrato Uniforme para Jugadores de Béisbol Profesional- Liga Americana" y su complemento "Condiciones Especiales al Contrato Uniforme para Jugadores de Béisbol Profesional"[1]-- el señor González Vázquez se obligó a jugar béisbol profesional con la organización de los Vigilantes de Texas, durante las temporadas de 1994 a 1998, a cambio de devengar una suma líquida de dinero ascendente a $28,700,000.[2] Adicional a

---

[1] Traducción de su versión original en ingles: " Uniform Player's Contract" y "Special Covenants to the Uniform Player's Contract".

[2] El señor González Vázquez recibiría el siguiente salario por temporada:

| | |
|---|---|
| **Temporada 1994** | **$3,000,000.00** |
| **Temporada 1995** | **$5,000,000.00** |
| **Temporada 1996** | **$6,700,000.00** |

ello, recibiría un bono por firmar ("signing bonus") de $2,000,000.00.[3] En su solicitud, la señora López Torres adujo que, si bien era cierto que el señor González Vázquez había suscrito su contrato con los Vigilantes de Texas el 31 de marzo de 1994, **ocho (8) días antes de contraer matrimonio con ella,**[4] el pacto en cuestión se hizo efectivo el 19 de abril de 1994, estando ya casada con González. En esta fecha fue que el Presidente de la Liga Americana de Béisbol Profesional aprobó el contrato, condición exigida para que cobrara eficacia.[5]

| | |
|---|---|
| **Temporada 1997** | **$7,000,000.00** |
| **Temporada 1998** | **$7,000,000.00** |
| Temporada 1999 | $7,250,000.00 |
| Temporada 2000 | $7,500,000.00 |

Precisa señalar, que los sueldos que serían devengados durante las temporadas 1999 y 2000 estaban sujetos a que el señor González Vázquez ejercitara la opción de extender su contrato.

[3] El bono por firmar sería desembolsado de la siguiente manera: $500,000 diez (10) días después de la aprobación del contrato por el Presidente de la Liga Americana de Béisbol Profesional; $500,000 el 1ro de julio de 1994 y $1,000,000 el 31 de diciembre de 1995.

[4] Las partes, domiciliadas y residentes en Puerto Rico, contrajeron matrimonio el 8 de abril de 1994. Se divorciaron el 7 de agosto de 1997.

[5] Véase, parte final del "Contrato Uniforme" la cual dispone:

> The Special Covenants are set forth in the attaches addendum. The attached addendum is hereby made part of this contract.
>
> Approval
>
> **This Contract or any supplement here to shall not be valid or effective unless and until approved by the League President.**

(Énfasis suplido.)

Por consiguiente, a juicio de la señora López Torres, toda remuneración derivada de éste debía considerarse un bien ganancial.

En oposición, el señor González Vázquez negó el carácter ganancial del referido contrato. Sostuvo que se firmó con anterioridad a la fecha del matrimonio, por lo que, conforme a lo dispuesto en el Art. 1302 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3642, los ingresos, así como cualquier bonificación recibida, eran bienes privativos por constituir créditos que surgieron antes de su matrimonio con la señora López Torres.[6]

Luego de varios incidentes procesales, entre los cuales se destaca el nombramiento de un contador partidor encargado de determinar, precisar y evaluar los

---

De otra parte, las Cláusula XVI de las "Condiciones Especiales al Contrato Uniforme para Jugadores de Béisbol Profesional" establece que:

XVI. Effective Date Of Contract

**This Contract, and each of its terms and conditions, shall become effective upon approval of this Contract by the President of the American League of Professional Baseball Clubs"**. (Énfasis suplido).

[6] En lo pertinente, el Art. 1302 de nuestro Código Civil, *supra*, establece:

Siempre que pertenezca a uno de los cónyuges una cantidad o crédito pagadero en cierto número de años, no serán gananciales las sumas que se cobren en los plazos vencidos durante el matrimonio, sino que se estimarán capital del marido o de la mujer, según a quien pertenezca el crédito.

bienes a dividir y a liquidar, el Tribunal de Primera Instancia dictó sentencia. Resolvió que por estar el contrato sujeto a una condición suspensiva-- tanto al amparo de la doctrina civilista como de la común angloamericana[7]-- su validez se configuró el 19 de abril de 1994, cuando fue aprobado por el Presidente de la Liga Americana de Béisbol Profesional. Por consiguiente, determinó que los ingresos, bonificaciones e incentivos derivados de éste eran gananciales. Oportunamente, el señor González Vázquez solicitó reconsideración, la cual fue denegada.

No conforme, y bajo fundamentos similares a los expuestos ante el foro de instancia, el señor González Vázquez acudió en *certiorari* al antiguo Tribunal de Circuito de Apelaciones (en adelante Tribunal de Apelaciones). Dicho foro denegó el auto solicitado y, en consecuencia, sostuvo el dictamen emitido por el Tribunal de Primera Instancia.

Insatisfecho, el señor González Vázquez acudió ante nos. En síntesis, sostuvo que el foro apelativo intermedio erró al concluir que el contrato en

---

[7] Al amparo de la figura del "conditions precedent" los contratantes pueden acordar que un contrato no tenga validez ni surta efectos, ni se convierta en obligatorio, como aquí, hasta que un tercero lo apruebe. Las partes que la utilizan no incurren en incumplimiento capaz de compelerse por un tribunal, ni el contrato adquiere validez o efectividad antes que se cumpla esa condición. Richard A. Lord, *Willinston on Contracts, supra*, págs. 394-398; Catherine M.A. Mc Cauliff, *Corbin on Contracts*, Vol. VIII, Lexis Law Publishing, 1999, págs. 11-15.(Traducción nuestra).

controversia advino eficaz el 19 de abril de 2004 (fecha en que el Presidente de la Liga Americana lo firmó) y no el 31 de marzo de 2004 (fecha del otorgamiento). De igual manera señaló que dicho foro incidió al determinar que las partidas derivadas del contrato eran bienes gananciales. Acordamos expedir. Oportunamente, la señora López Torres presentó su alegato en oposición. Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A.

En primera instancia,-y como punto de partida para determinar la naturaleza, privativa o ganancial, de los ingresos, bonificaciones e incentivos derivados del contrato suscrito por el señor González Vázquez y los Vigilantes de Texas- es menester dirimir la fecha exacta en que el referido contrato cobró eficacia. Demás está decir, que por tratarse aquí de un pleito sobre liquidación de una sociedad de gananciales, surgida al amparo de las leyes de Puerto Rico, la interpretación de los derechos y obligaciones de las partes se rigen por nuestro Código Civil.

Así aclarado, repasamos los principios estatutarios y jurisprudenciales, vigentes en nuestra jurisdicción, que gobiernan el asunto.

B.

Como se sabe, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 L.P.R.A. sec. 2992. Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor del mismo. Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994; Mercado Quilichini v. U.C.P.R., 143 D.P.R. 610 (1997).

En nuestra jurisdicción se reconoce el principio de autonomía contractual entre las partes contratantes. A su amparo, éstas pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarias a las leyes, la moral y el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372; Irizarry López v. García Cámara, res. el 27 de noviembre de 2001, 2001 TSPR 161. El mencionado principio va atado al axioma jurídico de que el mero consentimiento obliga, pues perfeccionado un contrato mediando el consentimiento de las partes, éstas se obligan desde ese momento no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375; Jarra v. Axxis

<u>Corporation</u>, res. el 30 de noviembre de 2001, 2001 TSPR 162.

Con frecuencia sucede que las partes, puestas en función de contratantes, someten el cumplimiento de la obligación a la realización futura de un hecho o la llegada de determinado día. Al así actuar, están modificando la normalidad en el cumplimiento, pues es regla general reconocida aquella que postula el cumplimiento de la obligación desde que ésta se constituye. Reconociendo esta modalidad en las relaciones jurídicas de las personas solemos hablar de obligaciones puras, condicionales y a plazos. Véase, José Ramón Vélez Torres, *Derecho de Obligaciones*, Ed. Universidad Interamericana de Puerto Rico, 1997, págs. 135-142.

Según Puig Brutau, en su obra *Fundamentos de Derecho Civil*, Tomo I, Vol. II, Ed. Bosch, 1985, pág. 81:

> [l]as obligaciones *puras* se definen como aquellas que son exigibles desde el instante mismo de quedar constituida la relación obligatoria; las *condicionales* son aquellas cuya eficacia depende de que se cumpla un hecho futuro o incierto; y las *a plazo* las que dejan establecida en firme la prestación sin que pueda exigirse todavía en el momento de quedar constituida la relación obligatoria.

En lo que aquí concierne, dentro de las obligaciones condicionales se encuentran las obligaciones sujetas a condición suspensiva, a cuyo

cumplimiento se subordinan los efectos de un acto jurídico por voluntad de los contratantes. A tales efectos, nuestro Código Civil dispone que "[e]n las obligaciones condicionales la adquisición de los derechos así como la resolución o pérdida de los ya adquiridos, dependerá del acontecimiento que constituya la condición". Art. 1067, 31 L.P.R.A. sec. 3042. **"Si la condición se cumple, la obligación surge....Si....no se realiza, el vínculo de derecho no llega a aparecer".** Jarra v. Axxis Corporation, res. el 30 de noviembre de 2001, 2001 TSPR 162; Meléndez v. Jiménez Realty, Inc. 98 D.P.R. 892, 897. (Énfasis nuestro).

Así pues, cumplida la condición, sus efectos dependerán del tipo de obligación de que se trate, a saber: de dar, de hacer, o no hacer. **En cuanto a las obligaciones de dar, una vez cumplida la condición, los efectos de la obligación se retrotraen al día de la constitución de aquella. En cuanto a las obligaciones de hacer o no hacer, la retroactividad será consecuencia, en cada caso, de un dictamen judicial**. Art. 1073 del Código Civil, 31 L.P.R.A. sec. 3048 Véase además, Puig Brutau, *Fundamentos de Derecho Civil, supra*, a la pág. 90-94; Diez Picazo y Gullón Ballesteros, *Sistema de Derecho Civil*, Vol. II, Ed. Tecnos, 1984, págs. 221-222; Ignacio Sierra Gil de la Cuesta, *Comentario al Código Civil*, Tomo VI, Ed. Bosch, 2000, págs.178-181.

A la luz de este marco jurídico, disponemos de la controversia ante nos.

C.

Es un hecho incontrovertido que la validez del contrato de servicios profesionales suscrito entre el señor González Vázquez y los Vigilantes de Texas se condicionó a que fuese aprobado por el Presidente de la Liga Americana de Béisbol Profesional. Así claramente se desprende de la parte dispositiva del "Contrato Uniforme" y de la Cláusula XVI "Condiciones Especiales al Contrato Uniforme para Jugadores de Béisbol Profesional."[8] Al subordinarse los efectos de un acto jurídico por voluntad de los contratantes a la ocurrencia de un hecho incierto, se constituyó una obligación sujeta a una condición suspensiva. Cumplida la condición el 19 de abril de 1994, la obligación pactada es totalmente exigible conforme a derecho.

Como la obligación contraída por el señor González Vázquez constituye una obligación de "hacer", se exige entonces, conforme lo dispone el Art. 1073 del Código Civil, *supra,* el determinar si los efectos de la obligación contratada se retrotraerán al día de su constitución. La tarea requiere indagar la voluntad de los contratantes atendiendo principalmente a los actos de estos anteriores, coetáneos y posteriores al otorgamiento del contrato, así como a la ocasión, las

---

[8] Véase, nota al calce Núm. 6

circunstancias, las personas y el acuerdo que se intentó llevar a cabo. Art. 1234 del Código Civil, 31 L.P.R.A. sec. 3472; Marcial v. Tome, 144 D.P.R. 522 (1997); Unysis v. Ramallo Brothers, 128 D.P.R. 842 (1991); Ramírez, Segal & Latimer v. Rojo Rigual, 123 D.P.R. 161, 173 (1989); Marina Ind., Inc. V. Browm Boveri, 114 D.P.R. 64, 70 (1983); Coop. La Sagrada Familia v. Castillo, 107 D.P.R. 405, 417, (1978).

Bajo este prisma, al examinar detenidamente las circunstancias particulares de este caso, así como los términos y condiciones del contrato, la conclusión obligada es que existen claros indicios en la conducta del señor González Vázquez y los Vigilantes de Texas, anteriores a la fecha en que el Presidente de la Liga Americana firmó el contrato en cuestión, que nos llevan a determinar que sus efectos, una vez cumplida la condición, se retrotraen a la fecha en que se firmó, 31 de marzo de 1994. En apoyo de esta conclusión, advertimos que diecisiete (17) días antes del Presidente de la Liga de Béisbol Profesional haber firmado el contrato, es decir, el 2 de abril de 1994, el señor González Vázquez comenzó a prestar sus servicios como jugador de los Vigilantes de Texas; quince (15) días antes, el 4 de abril de 1994, recibió la suma de $500,000.00 como bonificación por firmar ("signing bonus")y, un (1) día antes, el 18 de abril de 1994,

recibió su primera paga por jugar la primera quincena del mes.

"La vida del derecho, la forman los hechos." <u>Casiano Jr. V. Borintex Mfg. Corp.</u> 133 D.P.R. 127 (1993). En justicia, no podemos ignorar que la verdadera intención de las partes contratantes fue que el contrato tuviese efectos desde el mismo día en que se suscribió. Por ende, aun cuando fue firmado por el Presidente de la Liga Americana de Béisbol Profesional varios días después de haberse otorgado, es forzoso concluir que sus efectos se retrotraen a la fecha en que se constituyó, es decir, el 31 de marzo de 1994.

III

Adjudicado que el contrato cobró eficacia el 31 de marzo de 1994, fecha para la cual el señor González Vázquez no se encontraba casado con la señora López Torres, resta por determinar si los ingresos, bonificaciones e incentivos derivados del mismo son bienes privativos o gananciales. Según indicado, el señor González Vázquez argumenta que tales bienes son privativos. Invoca el Art. 1302 del Código Civil y sostiene que los pagos pactados contractualmente, así como el bono por firmar ("signing bonus") que recibió, no pueden considerarse un sueldo, si no créditos que surgieron con anterioridad a su matrimonio con la señora López Torres. No nos convence.

En nuestra jurisdicción **se reputan gananciales los bienes obtenidos por la industria, sueldo o trabajo de los cónyuges** o de cualquiera de ellos y los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los privativos.  Art. 1301 del Código Civil, *supra*; Pujols Betancourt v. Gordon Menéndez, res. el 3 de noviembre de 2003, 2003 TSPR 156.

Por *industria* se entiende cualquier actividad de los cónyuges, o de cualquiera de ellos en particular, capaz de obtener un beneficio o ganancia y siempre que la actividad no pueda catalogarse como trabajo en el sentido usual de este vocablo. La industria es obra de habilidad o destreza. Por *trabajo* se entiende cualquier actividad humana capaz de producir unos rendimientos económicos. "Comprende tanto el trabajo manual como el intelectual, el ejercicio de una profesión u oficio, **como la práctica de un arte o deporte que lleve consigo una compensación económica en forma de sueldo o salario**, o cualquier retribución como puede ser un premio o recompensa. **El empleo, función o cargo, como hemos visto, podrá tener carácter privativo, [...] pero el rendimiento económico siempre será ganancial [...].**" Manuel Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Tomo VIII, Vol. II, Editorial Revista de Derecho Privado, 1999, pág. 153-157. (Énfasis nuestro).

En fin, tal como lo expresáramos en García v. Montero Saldaña, 107 D.P.R. 319, 330-331 (1978), " [l]as locuciones "industria, sueldo y trabajo" contenidas en el segundo inciso del Art. 1301 del Código Civil comprenden todas las formas de retribuir la actividad productora del hombre, y todo ello quiere que se aporte al caudal común de los gananciales, ya se trate de trabajo manual o intelectual en todas sus manifestaciones de utilidad económica".

Examinado el contrato de servicios profesionales objeto de litigio, en todos sus términos y condiciones, procede concluir que éste versa sobre el *trabajo* de González Vázquez. Como tal, los ingresos derivados del mismo, durante la vigencia del matrimonio con la señora López Torres, son de carácter ganancial y están sujetos a inventario y eventual liquidación.[9]

Ahora bien, en vista de que las partes se divorciaron varios años antes de que se venciese el contrato, conviene señalar que los ingresos derivados del mismo, luego de decretado el divorcio por sentencia final y firme, son de carácter privativo. Art. 105 del Código Civil, 31 L.P.R.A. sec. 381; Díaz v. Alcalá, 140 D.P.R. 959, 972 (1996); García v. Montero Saldaña,

---

[9] Es menester señalar que, en el proceso de inventario y liquidación de los bienes gananciales, el foro de instancia deberá considerar cualquier gasto o desembolso, si alguno, efectuado por cualquiera de los cónyuges en beneficio de la sociedad legal de gananciales.

*supra*, 330-331 (1978). Ello es consecuencia de la norma reiterada en cuanto a que la sociedad legal de gananciales concluye una vez el matrimonio es disuelto por divorcio. Montalván Ruiz v. Rodríguez Navarro, 2004 TSPR 42; Díaz v. Alcalá, *supra,* a la pág. 972, Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 228 (1984); García López v. Méndez García, 102 D.P.R. 282,395 (1974).

De igual modo, el bono por firmar, en su totalidad de $2,000,000.00, es un bien privativo del señor González Vázquez. En este tipo de bonificación el acto de firmar, celebrado antes del matrimonio, es el único requisito necesario para obtener de manera instantánea el desembolso de la cantidad pactada como bono. Joseph M. Perillo, *Corbin on Contracts*, Vol. I, West Publishing Co., 1993, págs. 391-392. Habiéndose pactado que el bono en cuestión se pagaría en plazos, a saber: $500,000 diez (10) días después de la aprobación del contrato por el Presidente de la Liga Americana de Béisbol Profesional; $500,000 el 1ro de julio de 1994 y $1,000,000 el 31 de diciembre de 1995; se generó un crédito a favor del señor González Vázquez, que no goza de naturaleza ganancial aún cuando venza durante el matrimonio. Como es sabido, siempre que pertenezca a uno de los cónyuges una cantidad o crédito pagadero en cierto número de años, no serán gananciales las sumas que se cobren en los plazos vencidos durante el matrimonio, sino que se

estimarán capital privativo. Art. 1302 del Código Civil, 31 L.P.R.A. sec. 3642.

V

Por los fundamentos expuestos en la Opinión que antecede, se modifica el dictamen emitido por el Tribunal de Apelaciones en aquella parte que dispuso que el contrato objeto de litigio advino eficaz el 19 de abril de 2004, fecha en que el Presidente de la Liga Americana lo firmó, y no el 31 de marzo de 2004 fecha en que se otorgó; y en lo relativo al carácter ganancial del bono por firmar. En lo demás, confirmamos. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elaine E. López Torres

    Recurrida

                         CC-2003-473

       v.

Juan A. González Vázquez

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 12 de noviembre de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se dicta sentencia modificando el dictamen emitido por el Tribunal de Apelaciones en aquella parte que dispuso que el contrato objeto de litigio advino eficaz el 19 de abril de 2004, fecha en que el Presidente de la Liga Americana lo firmó, y no el 31 de marzo de 2004 fecha en que se otorgó; y en lo relativo al carácter ganancial del bono por firmar. En lo demás, confirmamos. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.

                              Patricia Otón Olivieri
                        Secretaria del Tribunal Supremo