El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
El Condominio Stella Maris, sito en el área del Con-dado, es un edificio residencial sometido al régimen de pro-piedad horizontal. Éste consta de 36 unidades de vivienda y 21 estacionamientos. En la Escritura Matriz del condo-minio se identificaron específicamente los 21 apartamen-tos con el uso exclusivo a un estacionamiento. En lo aquí pertinente, se estableció que el Apartamento 4-A tendría el uso exclusivo del estacionamiento 4-A, mientras que el Apartamento 4-D no figura entre los 21 apartamentos con el uso exclusivo de un estacionamiento.(1) Debemos seña-lar que, a pesar de que en la Escritura Matriz cada esta-cionamiento aparece identificado por número de aparta-mento, los estacionamientos fueron físicamente identificados utilizando una numeración del 1 al 21. Según surge de un memorando emitido por la Junta de Directores del Condominio, de 29 de diciembre de 1984, al Aparta-mento 4-A le corresponde el uso exclusivo del estaciona-miento número 16.(2)
Así las cosas, el 17 de octubre de 2002 Michael Nissen Holland, entonces dueño del Apartamento 4-A, presentó *507 ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda contra Frederick K. Genthaller, dueño del Apartamento 4-D. En ésta alegó que, como dueño del Apartamento 4-A, le corresponde el estaciona-miento número 16 y que Frederick Genthaller ocupaba dicho estacionamiento sin su consentimiento.
Frederick Genthaller contestó la demanda y negó que el estacionamiento número 16 le correspondiese a Michael Nissen Holland. Posteriormente, Nissen Holland presentó una demanda enmendada para añadir como codemandan-tes a Michael John Myers y a Gabriela Guzmán Ortiz, nue-vos adquirentes del Apartamento 4-A.(3)
Luego de varios trámites procesales, Frederick Gentha-ller presentó una solicitud de sentencia sumaria. En ésta adujo que él y todos sus antecesores con interés respecto al Apartamento 4-D han tenido el estacionamiento número 16 específicamente identificado en sus contratos de venta y que todos ellos han poseído y utilizado dicho estaciona-miento de forma continua, sin interrupciones, abierta, no-toria y pacíficamente por aproximadamente 35 años.(4) *508 Alegó, en síntesis, que conforme a los hechos admitidos por el propio Nissen Holland en un requerimiento de admisio-nes, al momento de presentarse la demanda ya se había consumado a su favor la prescripción adquisitiva ordinaria o, en la alternativa, la prescripción adquisitiva extra-ordinaria.
Michael Nissen Holland, Michael J. Myers y Gabriela Guzmán Ortiz presentaron una oportuna oposición al res-pecto y adujeron que en el presente caso existe una contro-versia material sobre el cumplimiento de los requisitos ne-cesarios para la configuración de la prescripción adquisitiva, específicamente, la posesión ininterrumpida. Señalaron que siempre ha existido una pugna real, cons-tante e incontrovertible sobre la titularidad del estaciona-miento número 16 y que la sentencia sumaria no es el ve-hículo apropiado para determinar si se configuró la prescripción adquisitiva alegada.
El 30 de noviembre de 2005 el Tribunal de Primera Ins-tancia dictó sentencia en la cual declaró con lugar la soli-citud de sentencia sumaria, resolviendo que el derecho de uso del estacionamiento número 16 pertenece con exclusi-vidad al propietario del Apartamento 4-D, el Sr. Frederick Genthaller. Determinó que Genthaller advino titular del estacionamiento en cuestión mediante prescripción adqui-sitiva ordinaria, puesto que cumplió con todos y cada uno de los requisitos para su consumación previo a que Nissen Holland presentara su demanda. En lo pertinente, señaló que la posesión fue ininterrumpida debido a que, con ex-cepción del señor Nissen Holland, ningún propietario del Apartamento 4-A presentó reclamación judicial alguna para reivindicar su derecho sobre el estacionamiento.
De dicha determinación, Nissen Holland, Myers y Guz-mán Ortiz acudieron —mediante un recurso de apela-ción— ante el Tribunal de Apelaciones. Señalaron que no procedía la sentencia sumaria dictada por el tribunal de *509 instancia debido a que existen dudas, avaladas con la ex-tensa documentación presentada, sobre la interrupción de la prescripción adquisitiva. Adujeron que el tribunal de instancia debió celebrar una vista evidenciaría en la cual se pasara testimonio oral y documental sobre diversas re-clamaciones extrajudiciales entre los respectivos dueños de los Apartamentos 4-A y 4-D sobre el estacionamiento 16 en cuestión. Solicitaron la revocación de la sentencia sumaria emitida y la devolución del caso al foro de instancia para la celebración de una vista en los méritos sobre la titularidad del estacionamiento 16 del Condominio Stella Maris.
El 16 de mayo de 2006 el foro apelativo intermedio emi-tió una sentencia en la cual confirmó el dictamen del tribunal de instancia, aunque por fundamentos distintos. De-terminó que en el presente caso no existen hechos medulares en controversia que impidan la resolución su-maria y que se consumó la prescripción adquisitiva, pero por la vía extraordinaria. Señaló que, independientemente de las disputas que a través de largos años ha habido con los sucesivos dueños del Apartamento 4-A por el estaciona-miento, nunca se había presentado un pleito ante los tribunales hasta que Michael Nissen Holland entabló la de-manda del caso de epígrafe el 17 de octubre de 2002; esto es, luego de haber transcurrido más de 30 años desde que en el 1969 el primer adquirente y, posteriormente los suce-sivos dueños del Apartamento 4-D comenzaron a poseer ininterrumpidamente el estacionamiento en disputa. Ex-puso, además, que las distintas reclamaciones extrajudi-ciales aducidas por Nissen Holland no constituyen una ci-tación judicial hecha al poseedor capaz de interrumpir civilmente la posesión conforme al Art. 1845 del Código Civil, 31 L.P.R.A. sec. 5266. Ello debido a que únicamente la presentación oportuna de una demanda ante el Tribunal de Primera Instancia y el diligenciamiento del correspon- *510 diente emplazamiento al demandado puede interrumpir ci-vilmente la posesión.
Inconformes, Michael Nissen Holland, Michael John Myers y Gabriela Guzmán Ortiz acudieron —mediante un recurso de certiorari— ante este Tribunal. Aducen que pro-cede revocar la sentencia emitida por el foro apelativo in-termedio debido a que éste incidió
... al determinar que el Tribunal de Instancia estuvo acertado al conceder la Sentencia Sumaria del recurrido [Genthaller] cuando había hechos en controversia que ameritaban una vista plenaria.
... al dictaminar que ante la prescripción extraordinaria sola-mente una acción judicial interrumpe dicho término. (Enfasis suprimido.) Petición de certiorari, pág. 7.
Expedimos el recurso. Luego de la comparecencia de las partes mediante sus respectivos alegatos, le concedimos permiso a la parte demandante peticionaria para presen-tar un alegato complementario respecto a que tampoco pro-cede la disposición sumaria del presente caso debido a que existe una controversia material respecto a si el uso exclu-sivo de los espacios de estacionamiento concedido en la Es-critura Matriz es o no una servidumbre predial disconti-nua la cual, por disposición expresa del Art. 1653 del Código Civil, 31 L.P.R.A. sec. 4595, no puede adquirirse mediante la prescripción adquisitiva. Solicitan que revo-quemos la sentencia emitida por el Tribunal de Apelacio-nes y que se ordene la celebración de una vista plenaria ante el Tribunal de Primera Instancia. Resolvemos.
I
La sentencia sumaria es el mecanismo procesal mediante el cual se le confiere discreción al juzgador para dictar sentencia sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ésta sin la necesidad de celebrar una vista evidenciaría. Véase Regla *511 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Para que se dicte sentencia por la vía sumaria es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja una controversia legítima sobre los hechos materiales del caso y que, por ende, sólo reste aplicar el Derecho. Pérez v. El Vocero de P.R., 149 D.P.R. 427 (1999).
“El tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre al-gún hecho material y esencial!,] o (4) como cuestión de de-recho no procede.” Vera v. Dr. Bravo, 161 D.P.R. 308, 333-334 (2004).
Es norma reiterada que este mecanismo procesal es un remedio discrecional y que su uso debe ser mesurado. Sólo cuando el tribunal esté claramente convencido de la ausencia de controversia respecto a hechos materiales del caso y de que la vista evidenciaría es innecesaria, procederá que dicte una sentencia sumaria. Incluso, aun cuando no se presente prueba que controvierta la presentada por el promovente, no significa necesariamente que procede la sentencia sumaria. Vera v. Dr. Bravo, ante; Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154 (2005).
“En los casos en que no exista una clara certeza sobre los hechos materiales y esenciales de la controversia, no procede una sentencia sumaria.” (Enfasis suprimido.) Sucn. Maldonado v. Sucn. Maldonado, ante, pág. 185. De otro modo, el uso irrestricto del mecanismo de sentencia sumaria constituiría una violación al debido proceso de ley, pues “tomando en consideración que la sentencia sumaria es un remedio extraordinario y que su concesión está a discreción del tribunal, ‘el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede pres- *512 tarse para despojar a un litigante de “su día en corte”, principio elemental del debido proceso de ley’ ”. E.L.A. v. Cole, 164 D.P.R. 608, 627 (2005).
II
Conforme a los hechos y el derecho antes esbozado, nos corresponde resolver si en el caso ante nuestra considera-ción existe controversia sobre algún hecho material que impida su resolución sumaria y amerite la celebración de una vista plenaria ante el Tribunal de Primera Instancia. Veamos.
En primer término, la parte demandante peticionaria nos señala que existe controversia respecto a si se inte-rrumpió la prescripción adquisitiva en cuestión. Aduce en apoyo a su señalamiento que debe celebrarse una vista ple-naria en la que se pase prueba sobre las distintas reclama-ciones extrajudiciales habidas entre los respectivos dueños de los Apartamentos 4-A y 4-D, las cuales entiende fueron suficientes para impedir que los distintos dueños del Apar-tamento 4-D hayan poseído ininterrumpidamente el esta-cionamiento número 16 durante el tiempo que requiere la ley.
Sabido es que la prescripción adquisitiva, también denominada usucapión, “consiste en la adquisición del dominio u otro derecho real poseíble por medio de la posesión civil mantenida durante el tiempo y con arreglo a las condiciones que requiere la ley”. J.R. Vélez Torres, Curso de Derecho Civil: los bienes, los derechos reales, Puerto Rico, Ed. Oligraff, 1993, T. II, pág. 263. Véase, además, Art. 1830 del Código Civil, 31 L.P.R.A. see. 5241. Para que se entienda consumada la usucapión —independientemente de que sea por la vía ordinaria o la extraordinaria— deben siempre coincidir ciertos requisitos, a saber: (1) capacidad de los sujetos involucrados, entiéndase, del que pierde el derecho real de que se trate y de aquel que lo *513 adquiere, o usucapiente; (2) que recaiga sobre cosas sus-ceptibles de usucapión, y (3) que la posesión sea en con-cepto de dueño, pública, pacífica e ininterrumpida, por todo el tiempo que establece la ley. Vélez Torres, ante, págs. 266-276. Véase Art. 1841 del Código Civil, 31 L.P.R.A. see. 5262.
Con respecto a la interrupción de la usucapión, el Art. 1843 del Código Civil, 31 L.P.R.A. see. 5264, específicamente establece que la “posesión se interrumpe para los efectos de la prescripción, natural o civilmente”. En lo aquí pertinente, el Código Civil dispone que se interrumpe civilmente la posesión: (1) por la citación judicial hecha al poseedor, aunque sea por mandato del tribunal o un juez incompetente;(5) (2) por el requerimiento judicial o notarial, siempre que dentro de dos meses de practicado se presente ante el tribunal o el juez la demanda sobre posesión o dominio de la cosa cuestionada, y (3) por el reconocimiento expreso o tácito que el poseedor haga del derecho del dueño. Véase Arts. 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. sees. 5266, 5268 y 5269.
De una lectura de lo antes expuesto se deduce que las reclamaciones extrajudiciales, capaces de interrumpir la prescripción extintiva, no interrumpen la prescripción adquisitiva. Ello debido a que “la interrupción ... ‘civil es de derecho estricto y sólo tiene lugar cuando concurre alguna de las causas taxativamente marcadas por la ley’ ”. Sucn. Carrera Cancel v. Sucn. Castillo, 105 D.P.R. 691, 694 (1977).
Frente a la prescripción adquisitiva “no es justificado invocar, pese a su similitud, el artículo 1973 [del Código Civil de España, Art. 1873 nuestro, 31 L.P.R.A. see. *514 5303,] relativo a los modos de interrumpir la prescripción extintiva, ya que sus mandatos no pueden proyectarse frente a la prescripción del dominio”. J. Santos Briz, Dere-cho Civil, Teoría y Práctica, Madrid, Ed. Rev. Der. Privado, 1973, T. II, pág. 246.(6) Según expusimos en Sucn. Carrera Cancel v. Sucn. Castillo, ante, págs. 694-695, citando a Manresa:
... “en la prescripción extintiva se comprende fácilmente que cualquier gestión del interesado, aunque sea extrajudicial, baste para que surta el efecto de interrumpir la posesión, pues su objeto es asegurar la subsistencia de una acción o de un derecho que forma parte del patrimonio del que interrumpe y que en tal concepto la ley debe amparar y hacer respetar, dando todas las posibles facilidades para mantener su virtua-lidad y efectos. Por eso el Código, ... autoriza en su Art. 1.973 [Art. 1873 nuestro, 31 L.P.R.A. sec. 5303,] que la simple recla-mación particular o extrajudicial del acreedor interrumpa el curso de la prescripción citada. Pero en la adquisitiva son dis-tintas las circunstancias y la razón legal, pues como el fin de la misma es la adquisición del dominio o de algún derecho real que antes de ella no se tiene, o no forma parte del patrimonio del que prescribe, ... y cuya adquisición viene a favorecer la ley por ... motivos de interés social ... desde luego resulta de una evidencia indiscutible, que en vez de facilidades debe po-ner trabas la ley a la interrupción para no impedir el perfec-cionamiento y la plena constitución o creación del derecho que concede al poseedor por consecuencia de la posesión conti-nuada, sin contradicción eficaz, por el plazo establecido por la misma con dicho objeto.”
En el presente caso, no existe controversia alguna res-pecto a la naturaleza extrajudicial de las reclamaciones aducidas por la parte demandante peticionaria. Dicha parte así lo admite en sus distintos escritos y no se deduce otra cosa de una lectura del expediente.(7) Resulta evi- *515 dente, entonces, que no existe una controversia material sobre la posesión ininterrumpida de los dueños del Aparta-mento 4-D respecto al estacionamiento. Las reclamaciones extrajudiciales señaladas por la parte demandante peticio-naria resultaron insuficientes para lograr la interrupción de dicha posesión, pues —según expusimos anteriormen-te— las reclamaciones extrajudiciales no interrumpen la posesión de la prescripción adquisitiva.
Por consiguiente, no erraron los tribunales recurridos al estimar que no existe controversia sobre la posesión inin-terrumpida del estacionamiento número 16 por parte de los distintos dueños del Apartamento 4-D y al no celebrar una vista plenaria al respecto.
III
Ahora bien, la parte demandante peticionaria aduce, además, que existe controversia respecto a si el uso exclu-sivo de los estacionamientos es un bien susceptible de ser usucapido. Entiende que debe celebrarse una vista plena-ria para dilucidar si el uso exclusivo a los estacionamientos es o no una servidumbre predial discontinua, la cual, por disposición de ley, no puede ser adquirida mediante una *516 prescripción adquisitiva. (8) Coincidimos en que en las cir-cunstancias particulares de este caso se debe celebrar un juicio plenario para determinar si el uso del estaciona-miento es un bien susceptible a la usucapión.
Según señaláramos anteriormente, la usucapión sólo puede recaer sobre cosas susceptibles de ser adquiridas mediante usucapión. De no serlas, no podrá consumarse la usucapión sobre ellas, independientemente de que se cum-pla con los demás requisitos dispuestos en la ley.
De un análisis del expediente surge que existe contro-versia sobre la susceptibilidad de que el uso exclusivo de los estacionamientos pueda ser adquirido mediante usucapión. Los documentos que forman parte del expe-diente no nos permiten concluir con certeza la naturaleza del derecho concedido en la Escritura Matriz respecto a los estacionamientos. Esto es, si se trata de un derecho de pro-piedad u otro derecho real, o de una relación de servidum-bre entre cada apartamento, como predio dominante, y cada espacio de estacionamiento, como predio sirviente.
En Pellón v. O’Clare, 98 D.P.R. 692 (1970), reconocimos que los titulares del Condominio San Jorge tenían derecho a un espacio de estacionamiento. Señalamos que no era necesario resolver si el derecho a un estacionamiento era un derecho de propiedad, una relación de servidumbre en-tre cada apartamento y cada local de estacionamiento, u otra clase de derecho real debido a que la Escritura Matriz del condominio expresamente establecía la naturaleza pri-vada de las áreas destinadas a estacionamiento y el dere-cho de cada condomino a, al menos, un espacio de estacionamiento.
No obstante, el caso hoy ante nuestra consideración pre-senta una situación completamente distinta. La Escritura Matriz del Condominio Stella Maris se limita a hacer refe- *517 renda a un “uso exdusivo de los estacionamientos”, sin adjudicar expresamente la titularidad de éstos a los apartamentos. Tampoco se hace referencia a los estaciona-mientos al describir las cabidas de los apartamentos con el uso exclusivo a un estacionamiento ni se designan como elemento común del condominio. Resulta aún más confuso que en algunos documentos que forman parte del expe-diente se enuncia que los apartamentos tienen derecho al “uso exclusivo de un estacionamiento”, lo que puede suge-rir que el uso de los estacionamientos es una servidumbre predial discontinua; mientras que en otros documentos se utilizan vocablos de los cuales se puede inferir que los es-tacionamientos son propiedad privada, susceptible de ser adquirida mediante usucapión. (9)
Siendo así, no estamos claramente convencidos de que no exista controversia sobre el hecho de que los estaciona-mientos puedan, o no, ser adquiridos mediante usucapión y de que no sea necesaria una vista evidenciaría al respecto. Esto es un hecho material y necesario para la correcta dis-posición del presente caso, pues, según antes expuesto, la susceptibilidad a que la cosa pueda someterse a usucapión es un requisito indispensable para que la prescripción ad-quisitiva se entienda consumada.
El Tribunal de Primera Instancia debió haberse perca-tado de que de los documentos que forman parte del expe-diente surge controversia sobre el cumplimiento de dicho requisito, en vez de decretar la consumación de la prescrip-ción adquisitiva enfocándose únicamente en si la posesión del Apartamento 4-D por parte de los distintos dueños fue en concepto de dueño, pública, pacífica e ininterrumpida por el tiempo establecido en la ley. El propio demandado *518 Frederick Genthaller, en su solicitud de sentencia suma-ria, trajo a la atención del Tribunal de Primera Instancia, como un hecho que alega incontrovertido, que la normas aplicables a las servidumbres prediales discontinuas, entre éstas su insusceptiblidad de ser adquiridas por usucapión, no aplicaban a este caso. Sin embargo, de los documentos que forman parte del expediente no surge con claridad y certeza que las normas relativas a. las servidumbres pre-diales discontinuas no apliquen a la presente situación de hechos.
En consecuencia, creemos que en el caso ante nuestra consideración existe una controversia legítima sobre un hecho material que impide su resolución sumaria y que, por ende, procede devolver el caso ante el Tribunal de Pri-mera Instancia para la celebración de una vista plenaria sobre la susceptibilidad de los estacionamientos a ser ad-quiridos mediante usucapión.
La ambigüedad del lenguaje utilizado en la Escritura Matriz, unida al lenguaje confuso de los restantes documentos que forman parte del expediente, requiere que ante el Tribunal de Primera Instancia se presente prueba sobre la intención que tuvieron las partes involucradas al momento de redactarse la Escritura Matriz del Condominio Stella Maris. Esto, claro está, tomando en consideración los actos anteriores, coetáneos y posteriores de los contratantes, al igual que el uso o la costumbre y demás circunstancias indicativas de la intención contractual, conforme a lo establecido en los Arts. 1234 y 1239 del Código Civil, 31 L.P.R.A. secs. 3472 y 3477, y en nuestra jurisprudencia.(10) Sabido es que cuando no es posible de- *519 terminar la voluntad o intención de los contratantes con la mera lectura literal de las cláusulas contractuales, deberá recurrirse a la evidencia extrínseca para juzgarla, utili-zando principalmente los actos anteriores, coetáneos y pos-teriores de los contratantes, el uso o la costumbre y demás circunstancias indicativas de la intención contractual, in-cluso la ocasión, las circunstancias, las personas y el acuerdo que se intentó llevar a cabo. Municipio Mayagüez v. Lebrón, 167 D.P.R. 713 (2006); S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713 (2001).
Ciertamente, resolver lo contrario sería despojar a una parte de su día en corte, en clara violación al debido pro-ceso de ley.(11)
IV
En mérito de lo antes expuesto, procede revocar las sen-tencias recurridas y devolver el caso al Tribunal de Pri-mera Instancia para que se celebre una vista plenaria para dilucidar cuál es el derecho aplicable en los estacionamien-tos en controversia y si con respecto a ese derecho se con-figuran los requisitos de la usucapión.

*520
Se dictará Sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri no intervino. El Juez Asociado Señor Rivera Pérez no interviene.

 El Condominio Stella Maris quedó sometido al régimen de propiedad horizontal mediante la Escritura Núm. 166 otorgada el 11 de febrero de 1969 ante el notario Carlos J. Faure. En esta escritura se estableció lo siguiente respecto a los espacios de estacionamiento:
“ — The building has twenty one (21) parking spaces for motor vehicles and the following apartments shall have the exclusive use of the space marked with a like number:----------------------------------------------------------------------------------
-------APARTMENT NUMBER--------------------------SPACE NUMBER-
-------FOUR-A (4-A)-----------------------------------------FOUR-A (4-A)-------
-------FOUR-B (4-B)----------------------------------------FOUR-B (4-B)------
-------FOUR-C (4-C)-----------------------------------------FOUR-C (4-0-—
-------FIVE-A (5-A)-------------------------------------------FIVE A(5-A)--------

 Previo a ello, el Departamento de Asuntos del Consumidor (DACo) emitió una Resolución en la que ordenó a la Junta de Directores del Condominio Stella Maris asignar y correlacionar los estacionamientos enumerados del 1 al 21 a los apartamentos que aparecen en la Escritura Matriz con uso exclusivo de un estacionamiento. Ello ante una querella presentada por el entonces dueño del Apar-tamento 6-B con respecto a la asignación e identificación de los estacionamientos.

 En dicha demanda enmendada también se añadió a la Junta de Directores del Condominio Stella Maris como parte codemandada. No obstante, el 20 de agosto de 2004 la parte demandante solicitó el desistimiento, con perjuicio, de la acción contra la Junta de Directores.

 De las determinaciones de hecho del tribunal de instancia surge que me-diante un primer contrato de venta la desarrolladora del Condominio Stella Maris le vendió al señor Bravo Torruella el Apartamento 4-A. De dicho contrato surge que el apartamento tiene un estacionamiento asignado, mas no se menciona el número específico del estacionamiento. Posteriormente, durante la construcción del edificio, la designación de las letras de los apartamentos fue invertida, de manera que el Apartamento 4-D se convirtió en el Apartamento 4-A y viceversa. Para el momento en que se otorgó la escritura de compraventa del señor Bravo Torruella, éste adquirió el Apartamento 4-D. De dicha primera inscripción en el Registro de la Propiedad no surge que el Apartamento 4-D goce del derecho de uso de estacionamiento. No es hasta la tercera inscripción en el Registro de la Propiedad —mediante la cual se hace constar que el Sr. Egon Richar Heinz compró el Apartamento 4-D del señor Bravo Torruella— que se señala que el Apartamento 4-D tiene derecho al uso del estacio-namiento número 16. Mientras, la Escritura Matriz del Condominio Stella Maris, la primera inscripción en el Registro de la Propiedad del Apartamento 4-A y sus subsi-guientes inscripciones indican que el Apartamento 4-A tiene el derecho de uso del estacionamiento número 4-A. Por lo cual, el mismo estacionamiento aparece inscrito en el Registro de la Propiedad a favor del Apartamento 4-A como estacionamiento número 4-A, y a favor del Apartamento 4-D como estacionamiento número 16.

 Por disposición expresa del Art. 1847 del Código Civil, 31 L.P.R.A. sec. 5267, “[s]e considerará no hecha y dejará de producir interrupción la citación judicial: (1) Si fuere nula por falta de solemnidades legales. (2) Si el actor desistiere de la de-manda o dejare caducar la instancia. (3) Si el poseedor fuere absuelto en la demanda”.

 El Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, establece que: “Día prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial al acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.”

 Entre las reclamaciones extrajudiciales aducidas por la parte demandante peticionaria se señalan las siguientes: (1) memorandos emitidos por la Junta de *515 Directores del Condominio Stella Maris que le adjudican el estacionamiento 16 al Apartamento 4-A; (2) cartas del Presidente de la Junta de Directores donde se cues-tiona el reclamo de los dueños del Apartamento 4-D a un estacionamiento; (3) certi-ficaciones del Registro de la Propiedad; (4) notificaciones en la cual se les solicita derrama a los condominos de acuerdo con la participación porcentual de los titulares, en las cuales el Apartamento 4-A aparece con un mayor porcentaje debido al estacio-namiento; (5) el reglamento del Condominio Stella Maris y (6) carta de Michael Nissen Holland dirigida a la Junta de Directores en la que reclama el estacionamiento. La parte demandante peticionaria también señala que existe una resolución de DACo en la cual se le reconoce al Apartamento 4-A el uso exclusivo de un estacionamiento. No obstante, de un examen de la referida resolución surge que en ésta no se le adjudicó derecho alguno de estacionamiento al Apartamento 4-A. La resolución emitida por DACo fue resultado de un pleito entre los dueños de los Apar-tamentos 6-B y 6-C, y los entonces dueños de los Apartamentos 4-A y 4-D no forma-ron parte de dicho proceso. Por ende, resulta innecesario discutir si un proceso ante DACo constituye una citación judicial capaz de interrumpir la prescripción adquisitiva.

 El Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653, sobre servidumbres que sólo se adquieren por título, dispone: “[l]as servidumbres continuas no aparentes y las discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título.”

 En la Escritura Matriz se utiliza la frase “apartments shall have the exclusive use of the space marked with a like number”. En la resolución emitida por DACo se utiliza la frase “use of parking space”. En documentos emitidos por la Junta de Directores se utilizan las frases “exclusive use”, “parking right” o se hace referencia a los estacionamientos como un “non-transferable addition to the particular apartment”.

 El Art. 1234 del Código Civil, 31 L.P.R.A. sec. 3472, dispone: “[p]ara juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos coetáneos y posteriores al contrato.” También podrá tomarse en consideración los actos anteriores a la contratación y demás circunstancias indicativas de la inten-ción contractual. Véanse: Municipio Mayagüez v. Lebrón, 167 D.P.R. 713 (2006); Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161 (1989); Coop. La Sagrada Familia v. Castillo, 107 D.P.R. 405 (1978); Hoffman v. Cuadrado, 14 D.P.R. 590 *519 (1908). Por otro lado, el Art. 1239 del Código Civil, 31 L.P.R.A. see. 3477, establece: “[e]l uso o la costumbre del país se tendrá en cuenta para interpretar las ambigüe-dades de los contratos, supliendo en éstos la omisión de cláusulas que de ordinario suelen establecerse.”

 Frederick Genthaller —mediante un alegato adicional ante este Tribunal— alega que no debemos considerar los argumentos aducidos por la parte demandante peticionaria respecto a la posible aplicación de las normas sobre servidumbres pre-diales discontinuas al presente caso, debido a que dicho asunto no fue traído ante el Tribunal de Primera Instancia. No le asiste la razón.
Según señaláramos antes, el propio Frederick Genthaller trajo a la atención del tribunal de instancia dichas normas alegando su inaplicabilidad, y aunque la parte demandante peticionara se enfocó en discutir que existía una controversia respecto a la posesión ininterrumpida, era deber del tribunal considerar si los estacionamientos son un bien susceptible de usucapirse, pues ello es un requisito esencial para decre-tar la consumación de la prescripción adquisitiva. Además, es norma reiterada que, aim cuando no se presente prueba que controvierta la presentada por el promovente de una sentencia sumaria, no significa que ésta proceda si de la totalidad de los documentos que acompañan la solicitud o que obran en el expediente surge una controversia legítima sobre un hecho material, como, en efecto, ocurrió en este caso.