COOPERATIVA LA SAGRADA FAMILIA, demandante y recurrente, *v.* JESÚS CASTILLO SÁNCHEZ, demandado y recurrido.

*Número:* R-77-263          *Resuelto:* 30 de mayo de 1978

406

*Juan M. Ponce Fantauzzi,* abogado de la recurrente; *Augusto Palmer* y *Jesús E. Palmer,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La Cooperativa La Sagrada Familia, domiciliada en Corozal, es una asociación cooperativa de crédito organizada bajo la Ley General de Sociedades Cooperativas de Puerto Rico (5 L.P.R.A. sec. 881 y ss.), cuyos objetivos[1] son facilitar préstamos a sus socios y fomentar el ahorro entre ellos. Su Junta de Directores decidió comprar una parcela de dos cuerdas con el propósito de levantar allí el edificio que alojaría sus oficinas y dependencias y al efecto, el 13 junio, 1972 su presidente Berríos y su tesorero Ortiz, suscribieron con el propietario recurrido Castillo un breve contrato de promesa de venta que dice así:

"DOCUMENTO DE OPCION DE COMPRA

—En Bayamón, Puerto Rico, a 13 de junio de 1972.

COMPARECEN

—DE UNA PARTE: Don Jesús Castillo Sánchez, mayor de edad, casado con doña Carmen J. Feliciano, propietario y de esta vecindad.—

—Y DE OTRA PARTE: La Cooperativa de Crédito y Ahorro 'La Sagrada Familia', representada en este acto por su Presidente Don José A. Berríos y su Tesorero Don Ramón Ortiz, mayores de edad, casados, propietarios y vecinos de Corozal y Bayamón, respectivamente para aquí comparecer evidenciarán dónde y cuándo y tantas veces como fuere necesario.—

—En tal virtud los comparecientes libremente, Exponen:—1ro. Que don Jesús Castillo Sánchez es dueño de la siguiente propiedad:—

—RUSTICA: Parcela de terreno radicada en el Bo. Pueblo, Carretera Estatal núm. 159, Km. 15.5 de Corozal, Puerto Rico, compuesta de cinco punto sesenta y ocho (5.68) cuerdas de terreno.—

2do. Que don Jesús Castillo Sánchez se compromete a vender y segregar y la Cooperativa de Crédito y Ahorro 'La Sagrada Familia' se compromete a comprar una parcela de terreno compuesta de dos punto cero cero cero una (2.0001) cuerda de terreno, a ser segregada de la finca principal descrita en el párrafo 1ro. de este documento, radicada en Corozal, Puerto Rico, por el

---

[1] Relatados en la Sec. 1ª de su Reglamento, *infra*.

convenido precio fijado tentativamente y sujeto a variaciones entre las partes, de OCHENTA MIL DOLARES ($80,000.00), de los cuales el vendedor recibe en este acto la suma de DIECINUEVE MIL DOLARES ($19,000.00) en moneda legal y corriente de los Estados Unidos de América y la suma de ONCE MIL DOLARES ($11,000.00) en un cheque de la Cooperativa de Crédito mencionada que lleva número 5785, de esta fecha, de manos del presidente y Tesorero de dicha Cooperativa, y a su entera satisfacción y contento, por lo que les otorga carta de pago por la suma recibida.—

3ro. Que este contrato de compraventa se formalizará una vez se haga la segregación de la propiedad antes descrita y se apruebe debidamente por la Junta de Planificación de Puerto Rico.—

4to. Tan pronto se apruebe dicha segregación se otorgará la correspondiente escritura pública.—

—Las partes aceptan este documento en todas sus partes y se obligan a su fiel cumplimiento, no sin antes hacer constar que entre líneas 'y segregar', vale.—

[Firmado] Jesús Castillo Sánchez—vendedor; J. A. Berríos, Presidente; Ramón Ortiz—Tesorero.

Affidavit No. 10,736

Suscrito y reconocido ante mí, por don Jesús Castillo Sánchez, don José A. Berríos y don Ramón Ortiz, de las circunstancias personales antes indicadas a quienes doy fe de conocer personalmente, en Bayamón, P.R., hoy 13 de junio de 1972.

[Firmado, signado, sellado y rubricado]
Jesús E. Palmer—Notario."

El vendedor Castillo encomendó al Ing. Luis Anzalota la segregación de la parcela de dos cuerdas y éste solicitó de la Junta de Planificación una lotificación para uso comercial que fue desaprobada por la Junta el 22 junio, 1972 por hallarse la parcela en zona clasificada como "residencial" (R-1). Hizo entonces dicho ingeniero nueva solicitud para uso residencial, que la Junta aprobó el 2 marzo, 1973. Enterada de estos procedimientos de la Junta de Planificación, la Cooperativa recurrente rehusó comprar, y por el contrario inició acción civil contra su vendedor Castillo solicitando la anulación

del contrato de promesa de compraventa y exigiéndole devolución de los $30,000.00 anticipados. El demandado reconvino exigiendo cumplimiento específico del contrato y con ello el pago de $50,000 pendientes del balance del precio.

El Tribunal Superior, Sala de Bayamón, declaró sin lugar la demanda y con lugar la reconvención ordenando otorgamiento de escritura y pago por la Cooperativa al promitente Castillo de los restantes $50,000 del precio aplazado, intereses legales a partir de 21 marzo, 1973, costas y $400.00 de honorarios de abogado.

El 4 agosto 1977 expedimos auto de revisión a solicitud de la Cooperativa y concedimos a esta recurrente la transcripción de evidencia limitada al testimonio del recurrido Castillo "y a la prueba relativa a que el uso comercial del solar era condición esencial del contrato de compraventa", la cual ha sido elevada. Ambas partes han sometido el recurso por sus escritos iniciales de solicitud de revisión y de oposición a la expedición del auto.

La Cooperativa recurrente señala como errores de la sala de instancia, 1° concluir sin base alguna en la prueba que el Inspector de Cooperativas no impugnó ni rechazó la transacción con Castillo; 2° concluir, en ausencia de prueba, que las minutas de la Junta de Directores no reflejan como condición del contrato la obligación por parte del vendedor de obtener la rezonificación del área para uso comercial; y un tercer planteamiento que formuló así:

"Erró el Honorable Tribunal a quo al no concluir a base de la prueba que la parte recurrida se comprometió a obtener una segregación comercial de la parcela que tenía que venderle a la parte demandante o en la alternativa que la parte demandante prestó su consentimiento al contrato bajo la creencia equivocada que la parcela que iba a adquirir era comercial y le servía para sus fines y propósitos."

La consideración de este tercer señalamiento absorbe las cuestiones menores suscitadas en los anteriores.

Hay un hecho central dominante que influye con fuerza decisiva en la adjudicación de esta controversia, a saber, que la recurrente Cooperativa La Sagrada Familia convino la compra de las dos cuerdas con el fin y propósito de establecer allí sus oficinas comerciales. Así aparece reconocido en las determinaciones y conclusiones de la sala de instancia donde se dice que el Ingeniero Anzalota, a quien el vendedor Castillo comisionó para gestionar la segregación de las dos cuerdas, en descargo de su obligación contractual, hizo la solicitud a la Junta de Planificación para lotificación comercial "bajo la deducción propia de que por razón de la naturaleza de la demandante, una cooperativa de ahorro y crédito, éste era el uso apropiado . . . ."; y que "puede deducirse que en la transacción apuntada lo más conveniente para la [Cooperativa] demandante habría sido hacer la adquisición garantizándole de primera instancia la obtención de una zona donde fuera permitido el uso comercial." Sobre dicha causa impulsiva o motivo determinante del contrato fue explícito el vendedor Castillo en su deposición de 12 febrero, 1974, a cuya página 63 declara:

"P. Y usted sabiendo que la Cooperativa solamente se dedicaba al crédito, concluyó o tenía conocimiento que la Cooperativa tenía como propósito el tener sus negocios allí?

R. Naturalmente, eso sí, eso es fácil de deducir."

Luego en el juicio el 6 diciembre, 1976 dicho vendedor demandado que es vecino de Corozal y al igual que la Cooperativa tiene negocios en dicho pueblo, admite hallarse enterado de que la Cooperativa quería comprar su terreno para establecer su local de negocio. T.E. pág. 98. Que la cualidad vital de la parcela que movió la intención de las partes con fuerza decisiva al contratar era su inmediata disponibilidad para uso comercial una vez hecha la segregación, es realidad inducida, además, por la naturaleza e integración jurídica de la Coope-

rativa a la que por Ley y Reglamento(²) le está vedado adquirir terreno para uso residencial.

La contención del vendedor Castillo, acogida por el tribunal a quo, es que la clasificación comercial no es condición exigible porque el contrato sólo le obliga a segregar sin que exprese con otras tantas palabras que la lotificación será con uso comercial autorizado. Cita como fundamentos de decisión el Art. 1235 del Código Civil (31 L.P.R.A. sec. 3473) en su prohibición de que cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquellos sobre que los interesados se propusieron contratar; y el 1233 (31 L.P.R.A. sec. 3471) en su primer párrafo que instruye: Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. El segundo párrafo de este artículo sienta una regla básica de interpretación de contratos al disponer:

---

(²) La compradora recurrente Cooperativa La Sagrada Familia es una entidad organizada bajo la Ley General de Sociedades Cooperativas de Puerto Rico (5 L.P.R.A. sec. 881 y ss.) que tiene por objetivos facilitar crédito a sus socios y fomentar el ahorro entre ellos. Al efecto declara su Reglamento en la Sec. 1ª:

"Esta Cooperativa se organiza con los siguientes objetivos generales, en armonía con las disposiciones de sus cláusulas de incorporación:

A. Estimular la economía y el ahorro entre sus socios.

B. Brindar a éstos facilidades de crédito a un tipo razonable de interés.

C. Fomentar la educación cooperativa y la expansión del movimiento cooperativo."

Así delimitados sus objetivos, no puede destinar sus fondos a la compra de terrenos residenciales, según ordenado por la Ley General de Cooperativas que en su Art. 4 ordena:

"Toda sociedad organizada de acuerdo con las disposiciones de las secs. 881 a 909 de este título tendrá la capacidad para actuar de que goza una persona natural pero sólo podrá realizar aquellos actos que sean necesarios o propios para realizar los propósitos relacionados en sus cláusulas y que no estén en conflicto con las secs. 881 a 909 de este título." 5 L.P.R.A. sec. 884.

Dichos fines y naturaleza de la Cooperativa fueron objeto de estipulación por las partes en litigio. T.E. pág. 8.

"Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas."

█ No hubo prueba de que Castillo actuara dolosamente ofreciendo a la Cooperativa a un costo de $80,000, un terreno inservible, por la restricción de su clasificación residencial, para edificación de sus estructuras comerciales. El ingeniero que él mismo encargó de la segregación hizo la solicitud a Planificación para lotificación comercial, y es sólo cuando recibe la desaprobación que cambia la petición para residencial. No pueden llamarse claros los términos de este contrato que dejan así de indefinido el requisito de calidad de la cosa que principalmente indujo y determinó a las partes a contratar, de lo que resulta la inaplicabilidad de los citados Arts. 1235 y 1233, éste en su primer párrafo. Excluido el dolo, o engaño, por parte del vendedor, surge como única alternativa la verdad de que sus prestaciones en el contrato de opción incluían la segregación de la parcela con uso comercial inmediato que satisficiera los fines y propósitos de la cooperativa compradora. Por no haber el recurrido cumplido esa obligación esencial, carece de base para exigir cumplimiento específico del contrato.

█ Mas hay una razón adicional que milita contra las pretensiones del vendedor. La prueba incontrovertida acusa ignorancia y desconocimiento por la cooperativa recurrente del impedimento de zonificación que para sus propósitos representaba la clasificación residencial de los terrenos del vendedor, por lo que su consentimiento en el contrato de promesa de compraventa está viciado de error. Ello de por sí basta para anularlo, como veremos, pero la prueba señala además hacia ignorancia del propio vendedor del referido obstáculo en Planificación. No hay base para concluir que conociendo Castillo la impropiedad del terreno para los propósitos de la Cooperativa, se los ofreciera como aptos y cualificados. Este cuadro general de hechos extiende al propio vendedor el vicio

de consentimiento. La situación está gobernada por los siguientes preceptos del Código Civil:

Art. 1217 (31 L.P.R.A. sec. 3404).

"Será nulo el consentimiento prestado por error, violencia, intimidación o dolo."

Art. 1218 (31 L.P.R.A. sec. 3405).

"Para que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo.

El error sobre la persona sólo invalidará el contrato cuando la consideración a ella hubiere sido la causa principal del mismo.

El simple error de cuenta sólo dará lugar a su corrección."

▆▆▆ El Tribunal Superior no estimó error que recaiga sobre la sustancia (³) de la cosa el predicado sobre la lotificación comercial del terreno. Sin embargo, el Art. 1218 declara error que invalida el consentimiento el que recae sobre aquellas *condiciones* de la cosa que principalmente hubiesen *dado motivo* a celebrar el contrato. Bonet Ramón (⁴) considera

---

(³) El párrafo 7 de sus conclusiones de derecho dice:

"De deducirse un error de parte de la demandante, al formalizar contrato de Promesa de Compraventa sin exigir una segregación que permitiera enseguida edificaciones de uso comercial no constituye, a nuestro entender, un error que vicie o invalide el consentimiento prestado, ya que no caería dicho error sobre la sustancia de la cosa que fue objeto del contrato, ni constituye un error sobre aquellas condiciones del mismo que principalmente hubiesen dado motivo a celebrarlo, Artículo 1218 del Código Civil; 31 L.P.R.A. sec. 3405; ciertamente no puede concluirse que los terrenos objeto del contrato no sirvan jamás para un uso comercial. Por el contrario, los mismos presumiblemente están sujetos a una probable re-zonificación que sea debidamente tramitada y que permita tal uso. Además, cuando se efectuó la transacción no medió señalamiento o garantía alguna como causa principal la vigencia de una clasificación de zona comercial que luego resultara inexistente."

Por el contrario, la prueba dejó establecida la esencialidad del error determinada por su nexo con el fin y objeto que las partes perseguían y tuvieron en cuenta al contratar, a saber, la cualidad del uso comercial autorizado para la parcela vendida.

(⁴) *Código Civil Comentado*, Art. 1266 C.C., Esp., pág. 981, Segunda edición, 1964.

esencial el error de hecho cuando recae sobre una cualidad del objeto de la prestación, la cual debe estimarse determinante de la voluntad del sujeto, llamado error *in substantia*, que es un error sobre las cualidades sustanciales, es decir, no sólo el error sobre la composición material del objeto, sino también sobre las cualidades que hacen entrar la cosa más bien en una categoría que en otra. Coincide Castán[5] al tipificar como error de hecho el que gravita sobre la esencia o cualidades sustanciales de la cosa (error *in substantia*) que afecta no a la identidad de la cosa, sino a la materia de que se compone o a determinados atributos o caracteres de la cosa, *ajenos a su materia*, pero que hayan podido ser estimados como esenciales de ella para los contratantes. Este error produce la anulabilidad del contrato.

█ Y el Tribunal Supremo de España en Sentencia[6] de 14 junio, 1943 declara que es obligado entender que la apreciación de la esencialidad del error requiere prueba y constancia del nexo que en cada caso tenga aquél con los fines y objeto que las partes hayan perseguido y tenido en cuenta al contratar; y que el Código Civil, más que cualquier otro, da destacado relieve al elemento subjetivo en la apreciación del error, pues al remitirse en el Art. 1266 (1218 P.R.) a las condiciones de la cosa que principalmente hubiesen dado motivo para celebrar el contrato bien claramente enseña que la justificación del carácter esencial del error ha de hacerse en relación con el objeto y cualidades especialmente tenidas en cuenta en el caso concreto, lo que trae como secuela que la determinación de lo que puede constituir la sustancia del objeto contractual requiere la investigación de los elementos que maticen cada caso particular, y, sobre todo, el fin perseguido por las partes, elementos que ofrecen un amplio margen al arbitrio judicial.

---

[5] *Derecho Civil Español*, Tomo 3°, págs. 411–412, Décima edición, 1967.

[6] Citada por Castán, *ibid.*, pág. 412, escolio (1).

■ Colin y Capitant(⁷) presentan como ejemplo de error que anula la venta de un terreno destinado a la construcción de una escuela el ulterior reconocimiento de que este terreno presentado como suficiente por el vendedor, no tiene la extensión exigida por la Administración para autorizar la apertura de la escuela. (Orleans, 18 enero, 1895. D.P. 95. 2. 417.) Añaden su criterio a la doctrina prevaleciente respecto a la consecuencia de error acerca de la *cualidad*(⁸) de la cosa, recomendando adhesión al sistema subjetivo, según el que hay que dedicarse en cada caso a investigar la *intención de las partes*. La sustancia de la cosa no será, pues, un conjunto de elementos estables, siempre los mismos, sean los que sean los contratantes. Serán, por el contrario, elementos variables con cada individuo. Será la *cualidad* que el contratante o los contratantes hayan tenido en cuenta principalmente, aquella que les ha determinado a contratar, aquella de la que se puede decir: "Si el interesado hubiese conocido su error, no hubiese evidentemente celebrado el contrato." *Cf. Cancel* v. *Municipio de San Juan*, 101 D.P.R. 296, 301 (1973).

■ El error acerca de la cualidad de la cosa no produce la nulidad radical, no destruye la declaración de la voluntad impidiendo la formación del acto jurídico, pero es causa de restitución y motivo de rescisión contra la adquisición que se ha hecho. La nulidad sólo puede ser invocada por quien cometió el error, mas para que merezca la protección de la ley, el error ha de ser de la clase que no se haya podido evitar con una regular diligencia. *Capó Caballero* v. *Ramos*, 83 D.P.R. 650, 673 (1961); *Rosa Valentín* v. *Vázquez Lozada*, 103 D.P.R. 796, 812–813 (1975). La recurrente Cooperativa La Sagrada Familia que contrató bajo la premisa errónea de que la parcela que adquiría tendría la cualidad esencial de servir a sus fines comerciales, no puede ser tachada de falta

---

(⁷) *Curso Elemental de Derecho Civil*, Tomo 3, pág. 614, Cuarta Ed., 1960.

(⁸) Colin y Capitant, *op. cit.*, pág. 613.

de diligencia en descubrimiento del error, si dependió del Ing. Anzalota que por su profesión es perito y conocedor de los reglamentos de zonificación, para la lotificación comercial de la parcela a segregarse. La prueba convence de que la recurrente, que alega error en la condición o calidad de la cosa, no se habría obligado si no lo hubiese sufrido.

Dispone el Art. 1234 (31 L.P.R.A. sec. 3472) que para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato. Sobre esta norma de interpretación ha declarado el Supremo español en Sentencias de 20 de abril de 1944 y 14 de enero de 1964 [9] que la interpretación de los contratos y demás actos jurídicos, aunque haya de partir de la expresión contenida en las palabras pronunciadas o escritas, no puede detenerse en el sentido riguroso o gramatical de las mismas, y ha de indagar fundamentalmente la intención de las partes y el espíritu y finalidad que hayan presidido el negocio, infiriéndose de las circunstancias concurrentes y de la total conducta de los interesados, como así viene a sancionarlo dicho artículo el cual no excluye los actos anteriores ni las demás circunstancias que puedan contribuir a la acertada investigación de la voluntad de los otorgantes.

Las conclusiones a que hemos llegado respecto al incumplimiento de prestación por el vendedor recurrido y nulidad del contrato por error en el consentimiento han hecho innecesario examinar el impacto del Art. 1227 en su prevención contra la causa ilícita [10] en los contratos, habida cuenta de que por disposición de ley y de reglamento la Cooperativa no podía obligarse ni invertir sus fondos en la adquisición de terreno para fines residenciales. Cuando media causa ilícita el contrato se frustra en su generación (*Rubio Sacarello* v.

---

[9] Citadas por Bonet Ramón, *op. cit.*, pág. 1009.

[10] Art. 1227.—"Los contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando se opone a las leyes o a la moral." 31 L.P.R.A. sec. 3432.

*Roig,* 84 D.P.R. 344 (1962); *Cardona* v. *Corte,* 62 D.P.R. 61, 81 (1943); y en vez de producirse su anulabilidad el caso es de inexistencia y nulidad de pleno derecho. *González Rodríguez* v. *Fumero,* 38 D.P.R. 556, 564 (1928). Tampoco ha habido necesidad de sujetar la exigibilidad por el vendedor recurrido de un contrato que redactó a su manera, sin intervención de la compradora recurrente, a la interpretación del texto menos favorable a la parte que estuvo en posición de imponer la mayor cantidad de condiciones onerosas. *C.R.U.V.* v. *Peña Ubiles,* 95 D.P.R. 311, 314–315 (1967); Art. 1240, Código Civil (31 L.P.R.A. sec. 3478).

*Se dictará sentencia declarando con lugar la demanda y sin lugar la reconvención y ordenando al demandado restituir a la demandante la cantidad de $30,000.00 que ésta anticipó en abono al precio en la compraventa, con intereses legales desde la fecha de presentación de la demanda y a pagarle $800.00 para honorarios de abogado, y las costas. Revocada.*

Los Jueces Asociados Señores Torres Rigual y Negrón García no intervinieron.