*805 Opinión disidente emitida por la
Jueza Asociada Señora Pabón Chameco, a la que se le une el Juez Asociado Señor Martínez Torres y el Juez Asociado Señor Kolthoff Caraballo.
Disiento de la sentencia dictada por el Tribunal respecto a la determinación de que no procede la confiscación de la fianza por existir un vicio en el consentimiento que invalidó el contrato. Esto tras descubrirse que la identidad que el acusado proveyó a las autoridades era falsa; información en la que descansó la fiadora para medir su riesgo. Discrepo por entender que, aunque el error cometido es esencial o determinante para la celebración del contrato, la fiadora no desplegó la diligencia exigible a una persona conocedora de este negocio ni cumplió con sus obligaciones, según dispuesto en las Reglas de Procedimiento Criminal pertinentes y las interpretaciones provistas por este Tribunal.
I
El 13 de abril de 2007, un individuo identificado como Javier De Jesús Carrillo fue intervenido y arrestado por alegada violación al Art. 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. see. 2401. Esta persona proveyó al agente del orden público una licencia de conducir con foto y firma del estado de California, una taijeta de Seguro Social con su nombre, número y firma, y una taijeta de identificación del estado de Nevada con foto y firma. Además, informó que residía en un condominio ubicado en el área de Isla Verde. Cabe apuntar que ninguno de los documentos presentados corroboraba la dirección ofrecida verbalmente por el acusado.
El 14 de abril de 2007, el Ministerio Público sometió la *806 denuncia a base de la información suministrada. Ese mismo día fue celebrada la vista de determinación de causa para el arresto, en la que se determinó causa probable para éste y se fijó una fianza por la suma de cien mil dólares. Conforme al proceso correspondiente, el individuo fue entrevistado e investigado por un oficial de la Oficina de Servicios con Antelación al Juicio (OSAJ).(1) Al no poder prestar la cantidad impuesta, éste fue fichado por la Oficina de Servicios Técnicos de la Policía y, posteriormente, ingresado al Centro de Detención Correccional de Bayamón.
El 23 de julio de 2007, International Fidelity Insurance Company (International o la fiadora) prestó la fianza correspondiente a favor del acusado tras descansar en la información obtenida por el Estado. No obstante, éste no *807 compareció al juicio en su fondo. Como consecuencia, el tribunal emitió una orden para mostrar causa por la cual no se debía confiscar la fianza, siendo notificada ésta el 13 de agosto de 2007. En esta fecha, International comenzó una investigación para dar con el paradero del acusado. La fiadora, entonces, se percató de que la identidad ofrecida por éste no concordaba con la del verdadero Javier De Jesús Carrillo y lo comunicó al tribunal.
En una segunda vista para mostrar causa —celebrada el 13 de noviembre de 2007, luego de que la fiadora solicitara un tiempo adicional para localizar al fiado— el tribunal consideró que no medió explicación satisfactoria para el incumplimiento de las condiciones de la fianza por lo que dictó sentencia sumaria contra la fiadora y confiscó el importe de esta fianza. Ésta fue notificada el 6 de diciembre de 2007.
Inconforme, International recurrió al Tribunal de Apelaciones y tras la confirmación de la sentencia recurrida por tal foro, acude ante nos.
HH Í—H
En estrecha relación con la presunción de inocencia que cobija a todo acusado, la Sec. 11 del Art. II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 2008, pág. 343, garantiza que:
Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.
La detención preventiva antes del juicio no excederá de seis meses. Las fianzas y las multas no serán excesivas.
En nuestro ordenamiento, este derecho se hace efectivo a través del contrato de fianza, sujeto a las exigencias de las Reglas de Procedimiento Criminal, ya sea mediante el reconocimiento de un fiador o por medio del depósito del importe de la fianza por el acusado. No obstante, del acusado no prestarla, el Estado lo mantendrá bajo su custodia *808 por un periodo que —por disposición constitucional— no podrá exceder de los seis meses. Sánchez v. González, 78 D.P.R. 849 (1955).
El contrato de fianza criminal es sui géneris entre el fiador y el Estado, por el que el Estado transfiere la custodia del acusado al fiador y éste último se compromete a garantizar la comparecencia del acusado durante todo el procedimiento criminal seguido en su contra. Pueblo v. Colón, 161 D.P.R. 254 (2004); Pueblo v. Martínez Hernández, 158 D.P.R. 388 (2003); Pueblo v. Newport Bonding & Surety Co., 145 D.P.R. 546 (1998). No obstante, como todo contrato de fianza siempre hay tres partes involucradas —acreedor, deudor-fiado y fiador— lo que da lugar a una serie de relaciones jurídicas entre estos sujetos que no pueden ser descartadas ligeramente.(2) J. Alventosa del Río, Fianza: Ámbito de Responsabilidad, Granada, Ed. Gomares, 1988, pág. 11.
En el contexto criminal, el contrato de fianza tiene como objetivo asegurar la comparecencia de la persona acusada ante el tribunal a todas las etapas del proceso judicial. Regla 219 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Es por tal motivo que la responsabilidad del fiador no se limita a la prestación de la fianza. Como parte de las particularidades del contrato de fianza criminal, el fiador está obligado a tomar parte activa en todo el proceso penal para estar al tanto del paradero del imputado de delito y asegurar su sumisión al proceso criminal pendiente. Pueblo v. Colón, supra, págs. 260—261; Pueblo v. Martínez Hernández, supra. Esto presupone, por lo tanto, un alto grado de diligencia de su parte, particularmente en aquellos casos *809 en los que la fiadora es una corporación que se dedica lucrativamente a ese negocio. Pueblo v. Colón, supra, pág. 266.
Toda vez que la custodia del acusado ha sido transferida al fiador, la incomparecencia del custodio ante el tribunal representa el incumplimiento del fiador de sus obligaciones. Pueblo v. Colón, supra. Por este incumplimiento deberá responder con la garantía ofrecida según el procedimiento de confiscación de fianza establecido en la Regla 227(a) de Procedimiento Criminal. Este precepto dispone que, de no mediar una explicación satisfactoria para el incumplimiento, el tribunal procederá a dictar una sentencia sumaria contra los fiadores y confiscará el importe de la fianza.
III
En el caso de autos, la fiadora aduce que medió vicio en su consentimiento por error y que éste conlleva la anulabilidad del contrato. Esto, porque confió en la identificación provista por el Estado que mediante varias de sus instituciones intervino, entrevistó y mantuvo la custodia del individuo bajo una identidad falsa. Apunta, además, que le es imposible ubicar y arrestar al acusado debido al error de identidad cometido por la “crasa falta de diligencia” del Estado que le “indujo a error”, haciéndola entrar a un contrato mediante falsa creencia. Por lo tanto, procedemos a profundizar en el estudio del vicio en el consentimiento por error y su aplicación en el contrato de fianza.
Todo contrato requiere del consentimiento de los contratantes, de un objeto cierto que sea materia del contrato y de causa. 31 L.P.R.A. see. 3391. Según estos requisitos, el Art. 1217 del Código Civil expone que “[s]erá nulo el consentimiento prestado por error, violencia, intimidación o dolo”. 31 L.P.R.A. see. 3404. En particular, el error como vicio en el consentimiento ocurre cuando “la ignorancia o una falsa información ha inducido al declarante a decidir algo que no es lo que realmente le hubiese interesado”. *810 Puig Brutau, op. cit., pág. 81. No obstante, no todo error invalida el consentimiento y, por consiguiente, el contrato. Nuestro ordenamiento requiere, en lo pertinente, que éste recaiga:
... sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo.
El error sobre la persona sólo invalidará el contrato cuando la consideración a ella hubiere sido la causa principal del mismo.
El simple error de cuenta sólo dará lugar a su corrección. 31 L.P.R.A. see. 3405.
Cónsono con lo anterior, el error como causa de invalidación del contrato es excepcional por presumirse la validez del contrato y del consentimiento. Por lo tanto, quien invoca el error tiene la carga de probarlo. Capó Caballero v. Ramos, 83 D.P.R. 650, 673 (1961); L. Diez-Picazo, Fundamentos del derecho civil patrimonial, 6ta ed. Madrid, Ed. Thomson/Civitas, 2007, Vol. 1, pág. 209; J.R. Vélez Torres, Curso de Derecho Civil: Derecho de Contratos, San Juan, Rev. Jur. U.I.A., 1990, pág. 53. Asimismo, y conforme nos hemos expresado en distintas ocasiones, para que éste anule un negocio jurídico, se requiere principalmente que el error sea esencial y excusable. Capó Caballero v. Ramos, supra, pág. 673; Diez-Picazo, op. cit., pág. 213.
A. Error esencial
El error —sobre la sustancia de la cosa que fuere objeto del contrato o sobre aquellas condiciones de ésta— es esencial cuando fue determinante para la celebración del negocio por la parte contratante que lo alega. Coop. La Sagrada Familia v. Castillo, 107 D.P.R. 405 (1978). El error esencial incluye el error en la identidad, la materia o las cualidades esenciales de la cosa, siempre y cuando, éstas fueran especialmente tenidas en cuenta. Puig Brutau, op. cit., pág. 85. A esos efectos, lo importante es que el tribunal quede con *811 vencido de que, del contratante haber conocido su error, éste no hubiese celebrado el contrato. Id. Asimismo, hemos expresado que “la apreciación de la esencialidad del error requiere prueba y constancia del nexo que en cada caso tenga aquél con los fines y objeto que las partes hayan perseguido y tenido en cuenta al contratar”. Id., pág. 415.
B. Error excusable
Por otro lado, es preciso que el error sea excusable. Esto es que derive de actos desconocidos del obligado sin que tal desconocimiento haya podido ser evitado con mediana prudencia o diligencia, que no sea imputable al que lo sufre. Capó Caballero v. Ramos, supra; Diez-Picazo, op. cit., pág. 215. En Capó Caballero v. Ramos, supra, pág. 677, citando con aprobación las manifestaciones del Tribunal Supremo de España expresamos que “es mucho menos admisible el error ‘cuando quienes contratan son personas peritas o conocedoras del respectivo negocio’ ”. (Enfasis suplido.)
Respecto a diligencia exigible y la distribución de las cargas precontractuales de información entre las partes, Diez-Picazo, op. cit., pág. 216, expresa que
... cada parte debe informarse de las circunstancias y condiciones que son esenciales o relevantes para ella, desde luego en los casos en que tal información le es fácilmente accesible. La diligencia se aprecia, además, teniendo en cuenta las condiciones de las personas. Es exigible mayor diligencia cuando se trata de un profesional o de un experto. La diligencia exigible es, por el contrario, menor, cuando se trata de persona inexperta que entre en negociaciones con un experto.
Por lo tanto, cada parte contratante tiene el deber de informarse. No obstante, esto no limita el análisis de los tribunales sobre la diligencia y conducta de la otra parte contratante.
*812 IV
En este caso, el acusado proveyó una identidad falsa a las autoridades y actuó en todo momento con tal identidad, incluso durante el periodo en el que estuvo bajo la custodia del Estado. El Estado utilizó los mecanismos acostumbrados y requeridos para corroborar la información y no advirtió la falsedad. Posteriormente, International, compañía experta en este tipo de transacciones, prestó una fianza por la cantidad de cien mil dólares en efectivo, como garantía de la comparecencia del acusado tras haber confiado en la identidad provista por el Estado. Por tal motivo, se le transfirió a la fiadora su custodia.
No nos cabe duda de que el engaño cometido por el individuo lesiona tanto los intereses del Estado, que quedó imposibilitado de procesarlo criminalmente, como los intereses económicos de la compañía fiadora. No obstante, considerando el conflicto de intereses existente entre ambas partes y conforme a la jurisprudencia y la doctrina descritas, debemos examinar si el error que aduce la fiadora fue esencial; cuál es la diligencia debida por la fiadora, y si conlleva la excusabilidad de este error.
A. Error esencial
El objeto del contrato de fianza suscrito por International era garantizar la presentación ante el tribunal del individuo que usurpó la identidad del Sr. Javier De Jesús Carrillo. Estamos contestes con la determinación de que hubo un error esencial respecto al objeto del contrato. Entendemos que, de la fiadora haber conocido que no estaba garantizando al verdadero señor De Jesús, no lo hubiese celebrado porque al cambiar la identidad del sujeto cuya presencia garantizaba, los elementos que habrían de considerar para medir su riesgo se trastocaban totalmente. No obstante, éste no es el único criterio para conceder la anulación del contrato de fianza. El error, además de ser esencial, debe ser excusable.
*813 B. Error excusable
Para que un error en la formación de un contrato sea excusable, la parte contratante que aduce el error tiene el deber de informarse de forma diligente. Como discutiéramos, tal deber recae sobre ambas partes.
De los hechos del caso surge que el Estado realizó la investigación correspondiente al proceso criminal en contra del fiado. Lamentablemente, a pesar de su gestión, no pudo descubrir la falsedad de la información suministrada por el acusado. Sin embargo, aunque el Estado no logró percatarse de que el acusado había falsificado su identidad, su actuación reflejó la diligencia debida. En lo concerniente a la evaluación e investigación llevadas a cabo por OSAJ, esta Oficina utiliza unos sistemas de información para verificar la información provista. Según el Reglamento sobre Procedimientos Uniformes para la Evaluación, Recomendación de Libertad provisional, Supervisión y Seguimiento de Imputados de Delito bajo la Jurisdicción de la Oficina de Servicios con Antelación al Juicio, Reglamento Núm. 5991, Departamento de Estado, 6 de julio de 1999, es ya cuando el tribunal decreta la libertad provisional del individuo bajo la jurisdicción de OSAJ, que ésta corrobora —por medio de mecanismos adicionales e, incluso, mediante investigaciones de campo— la información proporcionada, así como las recomendaciones y otros documentos solicitados posteriormente con el propósito de verificar los datos personales y así determinar los niveles de supervisión requeridos para cada individuo.
Por otro lado, la fiadora simplemente descansó en la información provista por el Estado, particularmente en la denuncia, sin realizar una investigación independiente que satisficiera sus necesidades como negocio y asumió la custodia y el riesgo por la incomparecencia del acusado. La confianza que pudiera suscitarle la denuncia, documento que puede ser enmendado por defectos de forma como defectos sustanciales, no le exime de la diligencia que le es *814 exigible como perita. Reglas 38(a) y 38(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
Todos los argumentos presentados por la fiadora, y avalados por la Sentencia, imponen sobre el Estado el peso de la corroboración de la identidad del acusado. Erróneamente, ésta arguye que, en un contrato de fianza, el Estado asume la responsabilidad contractual de identificar al imputado, sin necesidad de ésta verificarla, mientras que ella solamente se obliga a fiar y garantizar la comparecencia del fiado. Toma, por lo tanto, el riesgo de la incomparecencia a base de esta información. Esto, porque no es parte de la pericia requerida a este tipo de compañías la identificación de a quien fía tales sumas. No podemos avalar tales argumentos.
Precisamente, si la obligación de la fiadora consiste en fiar y garantizar la comparecencia del fiado, entonces para cumplir satisfactoriamente con esa obligación, consustancialmente, debe procurar, cuando menos, constatar la identidad del fiado. Lo anterior no requiere de una constatación empírica con bases científicas. Basta con llevar a cabo aquella gestión razonable que le permita asegurarse de que el fiado es quién dice ser. ¿Cómo una compañía fiadora puede prestar una fianza de una cantidad sustancial de dinero, sin siquiera constatar la identidad del fiado, máximo, cuando la información que le proporcionan a la fiadora antes de tomar su decisión de afianzar al acusado, denota, prima facie, la posibilidad de que el candidato a fianza haya falsificado su identidad o que pueda evadir la jurisdicción estatal?(3) Los argumentos de la fiadora, no sólo desconocen las distintas relaciones jurídicas existentes de un contrato de fianza, sino que ignoran el deber de *815 informarse que tienen las partes contratantes. Además, escudan su falta de diligencia tras la supuesta crasa falta de diligencia de la otra parte contratante.
Cabe señalar que a una compañía fiadora se le exige mayor diligencia por su condición de experta en la materia objeto de contrato que a una persona sin conocimiento de ésta. Como expresáramos en Pueblo v. Martínez Hernández, supra, pág. 400 esc. 10, las compañías fiadoras “[p] reviendo la eventualidad de tener que pagar en caso de incomparecencia del fiado, ... le exigen [al fiado] el pago de primas y el otorgamiento de garantías colaterales para cubrir el monto de la fianza, de manera que su riesgo quede asegurado”. Por lo tanto, no es un negocio que se realice sin las debidas salvaguardas y menos ante una suma tan considerable.
Por lo tanto, opinamos que no es suficientemente diligente urna fiadora que descarga su responsabilidad de revisar datos esenciales para la formación del contrato de fianza en el Estado. Sostener lo contrario, le impondría la responsabilidad absoluta al Estado (es decir, a una de las partes contratantes) de asegurarse que la información sobre el potencial fiado sea correcta. Tal contención, refrendaría hasta la más absurda indolencia del ente fiador en procurar la corroboración de la información suministrada por el Estado sobre el candidato que será fiado. Ese proceder no sería justo. Por eso, somos del parecer, que aunque el elemento bajo el que recayó el error era esencial —determinante para la celebración del negocio— éste no es un error excusable, debido a la falta de diligencia exigible a una corporación que se dedica lucrativamente a ese negocio.
La sentencia señala que lo resuelto no autoriza a las fiadoras a no “ejercer un esfuerzo diligente y razonable para identificar adecuadamente a las personas cuya comparecencia garantizan”, ni a que se interprete como “nor-ma absoluta que exima de responsabilidad a las fiadoras *816 en cualquier instancia en que resulte que el fiado proveyó información falsa o cometió fraude de identidad”. Sentencia, pág. 20. No obstante, es un contrasentido que no le exija tal esfuerzo a International y determine que no pro-cede la confiscación de la fianza, por ésta haber descansado tanto en la identificación —según los mecanismos disponibles— del Estado, como en que el acusado estuviera bajo su custodia por tres meses. Es decir, si este no es el caso apropiado para resolver que la fiadora no puede ser eximida de responsabilidad al no ejercer un grado mínimo de diligencia para constatar que el fiado proveyó información falsa sobre su identidad, entonces nos preguntamos ¿cuál será ese caso? ¿Hasta dónde habrá de extenderse la desidia de la fiadora para resolver que su omisión fue inexcusable? Además, la sentencia tiene el efecto de descargar totalmente sobre el Estado el deber de informarse que ambos contratantes se supone compartan como parte de la diligencia debida en la formación de todo contrato.
De forma alguna deseamos que se interprete que todo el peso sobre la identidad del fiador recae en la fiadora simplemente, porque ésta deriva lucro de ese negocio. Sabemos que una fiadora diligente puede no percatarse de este tipo de error como le sucedió al Estado. No obstante, la fiadora debe demostrar actuaciones diligentes que sean, a su vez, evaluadas según los hechos de cada caso. Estas no están presentes en el caso de autos.
De los hechos y admisiones de International surge que ésta no llevó a cabo ninguna averiguación independiente de la información suministrada, esencial para el contrato, y por la que asumió un riesgo por la suma de cien mil dólares. Asimismo, se desentendió del imputado hasta que el Tribunal de Primera Instancia le notificó una orden para mostrar causa ante la incomparecencia del individuo al juicio en su fondo, fecha cuando la fiadora admite que comenzó su investigación para dar con su paradero y por la que se enteró de que la identidad suministrada por éste *817 era falsa. La investigación que realizó la fiadora en este caso luego de su incumplimiento, que incluyó la visita a la residencia informada por el acusado y por la que se enterara de la falsa identidad provista, no puede considerarse como una gestión extraordinaria. Esto máxime, cuando la fiadora decidió no corroborar previamente la dirección de la residencia en Puerto Rico a pesar de haber tenido el acceso a esta información y cuando solamente contaba con dos identificaciones vigentes del acusado, que fueran supuestamente expedidas por los estados de Nevada y California y en las que aparecían direcciones del acusado en ambos estados. Ante este cuadro opinamos que la gestión mínima que podía realizar la compañía fiadora era verificar la dirección provista por el acusado, dada la inexistencia de una identificación que contara con una dirección física en Puerto Rico.
Ahora, sin embargo, ésta solicita que se le exonere del cumplimiento de su obligación, puesto que prestó tal fianza confiando en la información provista por el Estado en la denuncia que, según alega, tiene el deber contractual de identificar al fiado.
El error en la formación del contrato pudo haberse evitado por el ejercicio de una diligencia razonable a la hora de contratar sus servicios. La fiadora, que se lucra por la asunción del riesgo de la no comparecencia de los acusados al sustituir al Estado, asumió un riesgo y solicitó la custodia del acusado, quien, de otra forma, hubiese permanecido bajo la custodia del Estado en los límites constitucionales. No podemos sancionar el que el Estado asuma este riesgo por la falta de diligencia de la fiadora, particularmente cuando se presume que ésta es experta en la materia. Es por su condición de experta que ésta determina los riesgos que toma, así como los medios y la información que utiliza para evaluarlos. En este caso erróneamente descansó en el supuesto de que no le corresponde contractualmente identificar ni investigar a quién fiaba. Asimismo, International *818 expresó que, luego de haber evaluado la información pro-vista por el Estado, consideró que ésta era razonablemente confiable para prestar la fianza.
Sería ingenuo de nuestra parte liberar del pago de la fianza a una compañía especialista en la materia que fía a un individuo por semejante cantidad en las circunstancias descritas. Tal proceder podría tener efectos nocivos en los contratos de fianza criminal, pudiendo prestarse para un uso inescrupuloso que, además, impone al Estado todas las consecuencias. Al fin y al cabo, nuestra postura es cónsona con el raciocinio lógico e inteligible de que para cumplir con determinada obligación, es preciso realizar ciertos actos para lograr su consecución.
En esencia, estamos contestes con la sentencia dictada con relación a que el error en la identidad del acusado es de carácter esencial o sustancial en la formación del contrato de fianza. No obstante, disentimos por entender que el error sufrido en el caso de autos no es excusable. La fiadora no demostró ni un mínimo de diligencia al momento de su formación. Por lo tanto, concluimos que tal error no anula este contrato.
V
Por los argumentos expresados, disiento respetuosamente de la Sentencia emitida por el Tribunal. El Tribunal de Apelaciones actuó correctamente al confirmar la sentencia de confiscación de la fianza. No se puede responsabilizar al Estado por un riesgo asumido por la aseguradora.

 El procedimiento de evaluación e investigación de la información suministrada por los imputados es llevado conforme al Reglamento sobre Procedimientos Uniformes para la Evaluación, Recomendación de Libertad Provisional, Supervisión y Seguimiento de Imputados de Delito bajo la Jurisdicción de la Oficina de Servicios con Antelación al Juicio, Reglamento Núm. 5991, Departamento de Estado, 6 de julio de 1999. Éste incluye una entrevista inicial con un oficial de la Unidad de Evaluación y Recomendación de la Oficina de Servicios con Antelación al Juicio (OSAJ), quien recoge la información demográfica ofrecida por el imputado y la verifica en los sistemas de información disponibles. Tal como expone el Art. 6(c) de la Ley Núm. 177 de 12 de agosto de 1995, según enmendada, conocida como Ley de la Oficina de Servicios con Antelación al Juicio, 4 L.P.R.A. see. 1307, éstos incluyen el Sistema de Información de Justicia Criminal (SIJC), el National Crime Information Center (NCIC), el Vehicle and Driver Information System (VADIS/DAVID), la Oficina de la Administración de los Tribunales (OAT) y cualesquiera otros sistemas de información análogos.
Una vez realizada esta búsqueda, el Oficial cumplimenta el formulario “Informe” (que se nutre también de información provista por el imputado en una segunda entrevista) y que se somete con las debidas recomendaciones al tribunal, luego de evaluar la información de acuerdo con los criterios de evaluación de riesgo para recomendaciones al tribunal y supervisión por OSAJ. No obstante, no es hasta que el tribunal decreta la libertad provisional bajo la jurisdicción de la Oficina, que ésta toma fotografías del liberado y las registra en el “Registro de Cámara Instantánea”. Además, le solicita ciertos documentos al liberado en la denominada “entrevista social”, con el propósito de verificar sus datos personales. Éstos incluyen: cartas de recomendación de vecinos, amigos o familiares con dirección y teléfonos distintos, recibo reciente de luz, agua o teléfono, certificado de buena conducta, acta de nacimiento, entre otros. Es en esta etapa que las referencias y la información provistas por el liberado son verificadas por los recursos humanos de la Oficina, incluyendo la realización de las investigaciones de campo pertinentes. Esta información sirve para determinar los niveles de supervisión requeridos. Reglamento Núm. 6991, supra, págs. 42-43 y 54.

 “Es normal que el contrato de fianza se celebre entre el acreedor de otro y el fiador, por ser las partes acreedora y deudora en la relación accesoria de fianza. Sin embargo, la razón o causa determinante de que alguien se obligue a pagar una deuda ajena está en la relación que media entre el fiador y el deudor principal, que deberá calificarse en cada caso según su propia naturaleza ..., con independencia de la relación de fianza que es la existente entre acreedor y fiador”. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. II, pág. 594.

 Como parte de la información a la que tuvo acceso la fiadora antes de tomar su decisión de afianzar al acusado, pudo inspeccionar dos tarjetas de identificación aparentemente emitidas por dos estados de Estados Unidos con distintas direcciones, así como una tercera dirección en Puerto Rico ofrecida verbalmente por el acusado. Podemos razonablemente inferir que fue por esta misma falta de nexos con la comunidad, evidenciada por documentos de otros estados, que OSAJ no le ofreció a éste otros de sus servicios.